UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: IKO ROOFING SHINGLE | ) | 09-MD-2104 |
| PRODUCTS LIABILITY LITIGATION | ) | MDL Docket No. 2104 ALL CASES |
| | | |
| JAMES K. CANTWIL, | ) | |
| Individually and on behalf of himself | ) | 09-2298 (consolidated) |
| and others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| IKO MANUFACTURING INC.; IKO | ) | |
| INDUSTRIES, INC.; IKO INDUSTRIES, | ) | |
| LTD.; IKO MIDWEST, INC.; and | ) | |
| IKO PRODUCTION, INC., | ) | |
| Defendants. | ) | |

ORDER ON SUMMARY JUDGMENT

The named plaintiffs in this multidistrict litigation allege that roofing shingles manufactured by the defendants were defective and did not perform as expected after installation on the plaintiffs' buildings.

The defendants have moved for summary judgment as to plaintiff James K. Cantwil ("Cantwil"), who had a house built in Michigan in 1995. The building contractor chose IKO shingles with a 25-year warranty, and Cantwil selected the color from a sales board. The contractor purchased the shingles from a building supply store in Michigan. In June 2007, Cantwil noticed that the shingles were curling, cracking, degranulating, and that pieces were breaking off and falling from the roof. In 2008, Cantwil talked with IKO's customer service representative, who sent him a warranty claim form. Cantwil submitted the claim form in March 2009. He received an offer of payment of $1,153.64 along with a Good Will Release of Warranty. Cantwil rejected the offer. He filed his complaint in this case in July 2009.

The defendants argue that all of Cantwil's claims fail as a matter of law, and in addition, Counts I, II IV and VII are time-barred.

ANALYSIS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the

material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56, the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### I.  Choice of law and timeliness of claims

"When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). Cantwil filed his case in the Northern District of Illinois. Therefore, Illinois' choice-of-law rules apply. *Ennenga v. Starns,* 677 F.3d 766, 774 (7th Cir. 2012). Illinois follows the Restatement (Second) of Conflict of Laws. *Bank of America Nat. Ass'n v. Bassman FBT, L.L.C.*, 981 N.E.2d 1, 5 (Ill. App. Ct. 2012). "Generally, the object is to apply the law of the state with the most significant relationship to the issue." *Bassman*, 981 N.E.2d at 5. In Cantwil's case, his contractor decided upon IKO shingles with a twenty-five year warranty, Cantwil went to the building supply store to select the color, his contractor purchased the shingles from the building supply store, and the contractor built Cantwil's house.  All of those events occurred in Michigan.  The only connection to Illinois is that IKO has significant business operations in Kankakee, Illinois. IKO has a number of manufacturing facilities and may or may not have manufactured Cantwil's shingles in Illinois.  Consequently, the state with the most significant relationship to Cantwil's claims is Michigan.  But even where the substantive law of the non-forum state applies, Illinois courts apply the Illinois statute of limitations, "because statutes of limitations are procedural, fixing the time in which the remedy for a wrong may be sought rather than altering substantive rights." *Ennenga*, 677 F.3d at 774.

Illinois' "borrowing statute" may operate to further limit the statute of limitations.  The defendants cite *Chang* for the proposition that when the cause of action arises in a foreign state, the court must first look to that state's statute of limitations.  If the foreign state's statute of limitations is shorter than Illinois' limitation, the foreign state's limitation period applies.  If Illinois' is the shorter of the two, the Illinois limitation period applies.  *See Chang*, 599 F.3d at 733.  The discussion in *Chang* pertained to California's borrowing statute.  The Illinois borrowing statute is similar, with two additional conditions:

> The Illinois "borrowing statute" is an exception to [the rule that limitations periods are governed by Illinois law] but it has very limited application. The borrowing statute provides that "[w]hen a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be

maintained in this State." 735 ILCS 5/13–210. An additional judicially created condition narrows the borrowing statute even further:

"[A]ll parties [must] be non-Illinois residents at the time the action accrued and until the limitations laws of the foreign state runs." *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 693 (1999). Thus, the Illinois courts have held that the borrowing statute applies only "where (1) the cause of action accrued in another jurisdiction; (2) the limitations period of that jurisdiction has expired; and (3) all parties were non-Illinois residents at the time the action accrued and remained so until the foreign limitations period expired." *Newell Co. v. Petersen*, 758 N.E.2d 903, 908 (Ill. App. Ct. 2001).

*Ennenga*, 677 F.3d at 774 n.3. When it comes to the Illinois borrowing statute, a corporation is a resident only of its state of incorporation. *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 693 (Ill. App. Ct. 1999). The defendants were at all relevant times residents of Delaware or Canada, and Cantwil was a resident of Michigan. The Illinois borrowing statute applies to this case. The court must apply the limitations period of either Michigan or Illinois, whichever is shorter.

The next issue is when Cantwil's cause of action accrued. Generally, "a cause of action 'accrues' when facts exist that authorize the bringing of a cause of action." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1028 (Ill. 2012). Illinois courts have adopted the discovery rule: the limitation period begins to run when the plaintiff "knows or reasonably should know" both that an injury has occurred and that it was wrongfully caused; at that point the plaintiff must inquire further to determine whether an actionable wrong was committed. *Khan*, 978 N.E.2d at 1028-29. "The discovery rule can delay the commencement of the limitations period where an injury has already occurred but has not been discovered." *Khan*, 978 N.E.2d at 1035. "When a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed. . . . [O]nce it reasonably appears that an injury was wrongfully caused, the party may not slumber on his rights." *Nolan v. Johns-Manville Asbestos,* 421 N.E.2d 864, 868 (Ill. 1981).

The parties dispute when Cantwil's cause of action accrued. Cantwil's interrogatory answers indicate that he discovered the shingles were defective in June 2007. At his deposition he explained that in June 2007, for the first time (despite cleaning his own gutters a few times each year), he noticed that more than 75% of the shingles were cracking and curling, pieces of shingle were falling off his roof, and his gutters had small pieces of shingles and granules about 1/4 inch deep. Cantwil was very concerned and told his wife, "'I think our roof is – is looking a little rough for only being a little over 10 years old, and I said I'm concerned that something is not right with it.'" Cantwil Dep. 41. The plaintiffs argue that the cause of action did not accrue until 2008; he discovered the shingles were defective when a contractor informed him that the shingles were falling apart and would have to be replaced very soon. He filed his lawsuit in July 2009.

The court agrees with the defendants that unless a different date applies (as discussed below), Cantwil's claims accrued in June 2007. At that point, he had an obligation to inquire further to determine whether an actionable wrong was committed. *Khan*, 978 N.E.2d at 1029.

Count I –   Breach of express warranty

Michigan's limitation for breach of express warranty is four years. M.C.L. 440.2725.[1] Illinois' limitation is the same. *See* 810 ILCS 5/2-725(1). Both statutes state, "By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." *See* 810 ILCS 5/2-725(1); M.C.L. 440.2725(1). Cantwil's shingles, purchased in 1995, were covered by IKO's November 1, 1994 warranty or its April 15, 1995 warranty. The warranties state, "No action for breach of this limited warranty shall be brought later than one (1) year after any cause of action has accrued." The Michigan and Illinois statutes further specify that "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2-725(2); M.C.L. 440.2725(2). In this case, the cause of action accrued in 2007 when Cantwil was concerned enough about his roof to mention it to his wife. The one-year period ended in 2008; Cantwil filed his lawsuit in 2009.

Cantwil argues that the defendants are barred from asserting a statute of limitations defense due to the defendants' fraudulent concealment, citing Michigan law. Fraudulent concealment "tolls the statute of limitations 'when a party conceals the fact that the plaintiff has a cause of action.'" *Hennigan v. General Elec. Co.*, 2010 WL 3905770, at *5 (E.D. Mich. Sept. 29, 2010). The concealment must have been an affirmative act or misrepresentation; silence is insufficient to toll the limitation period. *SEMCO Energy, Inc. v. Eclipse, Inc.*, 2012 WL 6049655, at * 6 (Mich. App.  Dec. 4, 2012) ("Silence is only sufficient . . . if there is a fiduciary relationship between the parties."). Moreover, the tolling period is two years, starting when the plaintiff should have discovered the claim. *SEMCO*, 2012 WL 6049655, at *5. Cantwil first noticed that the shingles were failing in June 2007.[2] The condition was so obvious that his

---

[1] The defendants cite *Municipal Emp. Ret. Sys. v. Compuware Corp*., 2006 WL 1711324 (Mich. App. Ct. June 22, 2006), which notes a six-year statute of limitations for breach of contract generally, pursuant to M.C.L. 600.5807. In this case, the relevant statutes apply to breaches of contract for the sale of goods: M.C.L. 440.2725 and 810 ILCS 5/2-275. Both states' statutes are taken from Uniform Commercial Code § 2-725 (pertaining to contracts for sale and breach of warranty). *See SEMCO Energy, Inc. v. Eclipse, Inc.*, 2012 WL 6049655, at *5 (Mich. App. Dec. 4, 2012) (UCC statute of limitations applies to transactions for sale of goods).

[2] Cantwil argues that he was lulled into thinking that what he noticed was typical of a new roof. IKO information explained that "asphalt shingles gradually change with the passage of time.  Signs of this aging process may appear as early as the first couple of years, during what is called the **Curing Phase**. At first you may notice small surface cracks or a few small blisters."  Those conditions are not the conditions that Cantwil noticed in the summer of 2007, when his roof was approximately twelve years old.

father-in-law noticed it and commented, "That's not right." Cantwil filed his claim more than two years later. Count I is time-barred.

### Count II – Breach of implied warranty of merchantability and fitness for a particular purpose

Cantwil's shingles were covered by either the defendants' limited warranties dated November 1994 or April 1995; both warranties expressly disclaimed all implied warranties. The defendants argue that by definition, implied warranties do not extend to future performance. *See Frey Dairy v. A.O. Smith Harvestore Prods., Inc.*, 680 F. Supp. 253 (E.D. Mich. 1988) (citing M.C.L. 440.2725). Cantwil purchased the shingles in 1995. The more generous four-year limitation period has long since run. Cantwil's implied warranty claim is untimely.

Cantwil does not address this argument. Instead, he argues that any disclaimer of implied warranties must be conspicuous, citing M.C.L. 440.2316(2). The plaintiffs also cite *Mallory v. Conida Warehouses, Inc.*, 350 N.W.2d 825 (Mich. App. 1984) (ruling implied warranty disclaimer ineffective if inconspicuous). Cantwil contends that the disclaimer was inconspicuous because he did not find it until he looked at the package insert in his attic in 2007. Assuming, *arguendo*, that the implied warranty disclaimer was inconspicuous, it does not overcome the untimeliness.

### Count IV – Breach of contract

Cantwil alleges in Count IV that the defendants breached the contract when he purchased shingles of a particular quality, but the shingles did not meet that quality. The complaint speaks of breaches of express and implied warranties, which are addressed elsewhere in this order. In Cantwil's memorandum in opposition to the motion, he notes that the defendants breached the contract by selling him shingles that did not meet ASTM standards and did not last 25 years.

Again, S*EMCO* is instructive. In that case, the defendants sold natural gas valves to the plaintiff utility company, which in turn distributed the valves to customers with gas appliances in their homes. The last of the valves were purchased in 1999. In the following years, the valves began to break and cause house fires. SEMCO commenced an action in 2010, asserting various claims including breach of contract. The court found the breach of contract claim untimely pursuant to the four-year limitation period in M.C.L. 440.2725, and further found that the discovery rule in M.C.L. 600.5833 did not apply to contracts for the sale of goods. *See SEMCO*, 2012 WL 6049655, at *1-2, 5. Cantwil purchased his shingles in 1995. He did not file his lawsuit until 2009, far outside the limitation period. Count IV is time-barred.

### Count VII – Unjust enrichment

The Michigan statute of limitations for unjust enrichment follows the statute of limitations for similar legal claims raised by the plaintiff. *Underwood v. Albery*, 2010 WL 4977977 (Mich. App. Dec. 7, 2010). Cantwil pleads unjust enrichment as an alternative to his breach of contract claims; therefore, a four-year limitation period applies. A five-year statute of limitations applies in Illinois. *Zic v. Italian Gov't Travel Office*, 149 F. Supp. 2d 473, 475-76 (N.D. Ill. 2001) (finding unjust enrichment claim subject to general five-year statute of limitation under 735 ILCS 5/13-205). Therefore, Cantwil's claim is subject to a four-year limitation period.

Plaintiffs cannot dodge the bar of a limitations statute by resorting to an alternate form of equitable relief. *Underwood,* 2010 WL 4977977, at *2. Consequently, his claim for unjust enrichment did not accrue at a later date than his breach of contract claims accrued. Cantwil does not set forth any argument that his claim is timely. The defendants also argue that his claim fails as a matter of law, and Cantwil limits his arguments to that issue.

A plaintiff may have a solid *prima facie* case, but if the claim is untimely, he is barred from proceeding further. The outcome is no more favorable to Cantwil under Illinois law; unjust enrichment claims accrue when services are rendered. *Zic*, 149 F. Supp. 2d at 476. That moment occurred in 1995 when Cantwil purchased the shingles. He filed his lawsuit in 2009, many years too late. Count VII is also untimely.

## II. Claims that fail as a matter of law

The defendants contend that all of Cantwil's claims fail as a matter of Michigan law. Having decided that Counts I, II, IV, and VII are untimely, the court reaches the merits of the remaining claims: Count III (Michigan Consumer Protection Act); Count V (fraudulent concealment); and Count VI (negligence).

### Count III – Michigan Consumer Protection Act

In the fourth amended consolidated complaint [104], the named plaintiffs asserted their claims together in a single count. Count III is labeled "Violation of Illinois Consumer Fraud and Deceptive Business Practices Act and Substantially Similar Laws of Certain Other States." The Illinois statute applies only to consumer transactions that take place "primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005). Cantwil's transaction did not take place "primarily and substantially in Illinois." Therefore, the Michigan Consumer Protection Act (MCPA), M.C.L. 445.901, applies.

The defendants argue that a claim under the MCPA requires a showing that the plaintiff "suffered a 'loss as a result of [the defendants'] violation of the statute,'" citing *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775 (W.D. Mich. 2006). They argue that Cantwil cannot do this because he did not view any promotional materials or communicate with representatives prior to purchasing his shingles. He did not view the warranty until he went to the defendants' website in 2008 or 2009. Cantwil admits that he relied on his contractor's recommendation, and his own understanding that the shingles had a twenty-five year warranty.

Cantwil cites *Dix v. American Bankers Life Assurance Co.*, 415 N.W.2d 206, 209 (Mich. 1987), for the proposition that each member of the class need not individually prove reliance on the alleged misrepresentation. *Dix* does not allow the class representative to avoid a showing of reliance, however. As a class representative, Cantwil must show that *he* suffered a loss as a result of the defendant's misrepresentation. He has not done so.

*Kussy v. Home Depot U.S.A., Inc.*, Case No. 06-12899 (E.D. Mich.) further illustrates the distinction. Kussy filed a class action lawsuit against Home Depot for not honoring the marked price of electrical wiring. Kussy was informed at the register of the correct (higher) price, and he

paid the higher price. *Kussy*, d/e 20, p. 2 (Nov. 28, 2006). Kussy claimed that although he was not misled into paying the higher price, other consumers would have been misled. The court ruled that Kussy must show his own reliance on the defendant's misrepresentation – and if he did so, a class might be certified on the basis that a reasonable person would have relied on the marked price. *Kussy*, d/e 20, pp.10-11.

Cantwil cannot prevail, individually or as a class representative, on Count III.

## Count VI – Negligence

Cantwil alleges in Count VI that the defendants were negligent when they designed, manufactured, advertised, and sold a defective product, knowing the shingles would fail prematurely. The defendants argue that the economic loss doctrine bars recovery for Cantwil's loss. "The economic loss doctrine 'bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses incurred are purely economic.'" *SEMCO*, 2012 WL 6049655, at *3 (quoting *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 613 (Mich. 1992). The UCC governs "the economic relations between suppliers and consumers of goods." *Niebarger*, 486 N.W.2d at 618. To import a tort remedy into the transaction, Article 2 of the UCC "would be rendered meaningless" and "contract law would drown in a sea of tort." *Neibarger*, 486 N.W.2d at 618 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986)).

In other words, "defects of suitability and quality are redressed through contract actions and safety hazards through tort actions." *Detroit Bd. of Educ v. Celotex Corp.*, 493 N.W. 2d 513, 518 (Mich. App. 1992). If the parties can contemplate "the specific type of danger" posed by the product beforehand, the economic loss doctrine applies. *MASB-SEG Prop. Cas. Pool v. Metalux*, 586 N.W.2d 549, 554 (Mich. App. 1998). For example, if a lighting fixture fails and causes a fire, the economic loss doctrine applies. *MASB-SEG*, 586 N.W.2d at 554.

Cantwil claims that the economic loss doctrine does not apply to his case, citing *Blackward v. Simplex Prods. Div.*, 2001 WL 1255924 (Mich. App. 2001). In *Blackward*, the court ruled that the economic loss doctrine did not apply to the purchase of a building product used on the plaintiffs' residence. The court reasoned that the UCC applies to commercial transactions, but the plaintiffs were individual consumers whose purchase was for noncommercial use. In *Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783 (Mich. App. 2002), the court rejected that conclusion, noting that consumers engage in commercial transactions.

Three recent cases have clarified the holding in *Sherman*, which pertained to a consumer's complaint that his boat decayed more quickly than expected. In *State Farm Fire and Caves. Co. v. Conair Corp.*, 833 F. Supp. 2d 713 (E.D. Mich. 2011), a coffee maker purchased for residential use started a fire, causing $1 million damage to the home. In *In re Ford Motor Co. Speed Control Deactivation Switch Products Liability Litigation*, 664 F. Supp. 2d 752 (E.D. Mich. 2009), the failure of a switch in some Ford vehicles caused damage, in some cases, to more than the vehicle itself. In *Safeco Ins. Co. v. CPI Plastics Group, Ltd.*, 625 F. Supp. 2d 508 (E.D. Mich. 2008), a deck constructed of the defendant's building material caught fire and spread to the house, resulting in a loss of $460,000. In those cases, the plaintiffs' loss could, or

7

did, exceed disappointed economic expectation, and their loss would not be limited by the economic loss doctrine.

Cantwil argues that he suffered damage to property other than the shingles. He testified that an ice shield, ridge vent, and some of the subsurface were replaced when the shingles were replaced. He points to an invoice for the re-roofing, which included a flash pipe, ice water guard, ridge vent, and two boards, to show that the failure of IKO's shingles led to other property damage. At his deposition, Cantwil stated that the contractor who installed the replacement roof expressed no concern about the underlayment and subsurface; in fact the contractor said "everything was pretty much the way it should be under there." Cantwil Dep. 138. Cantwil further stated that the contractor replaced some items because "when you pull up the old roof, a lot of [the subsurface] gets damaged and that's important to have that and good integrity underneath." Cantwil Dep. 138-39. Cantwil attaches to his response a copy of the invoices for materials used in the re-roofing, which includes such things as caulk, felt, nails, staples, ridge vent, and two sheets of OSB board. *See* d/e 192-4.

This is a close call, but the analysis most applicable is found in *In re Ford*. There, the claims were asserted by a "loss of use" class and an "incident" class. *In re Ford*, 664 F. Supp. 2d at 759. The "incident" class alleged, among other things: damage or destruction to their vehicle; damage or destruction to other property caused by a fire in the vehicle; and in some cases, psychological or physical injury or death. *In re Ford*, 664 F. Supp. 2d at 759. The court held that under Michigan law, the economic loss rule barred recovery in tort for the loss of economic value of the vehicle. *In re Ford*, 664 F. Supp. 2d at 767. Damage or destruction to other property, and personal injury -- traditionally considered in tort -- would not be barred by the economic loss rule. *In re Ford*, 664 F. Supp. 2d at 767. IKO's shingles are analogous to the faulty switch in *In re Ford*. The shingles may have been defective, but the damage was limited to Cantwil's roof. Consequently, his negligence claim is barred by the economic loss doctrine.

### Count V– Fraudulent concealment[3]

Cantwil asserts a claim of fraudulent concealment, alleging that the defendants concealed information about the material defects of the shingles – facts that a reasonable person would have considered when deciding whether to buy IKO shingles.

The defendants argue that Cantwil must show that (1) the defendants owed him a duty to disclose, and (2) he relied on the non-disclosure. *See Carr v. Wittingen*, 451 N.W.2d 584, 587 (Mich. App. 1990), *rev'd on other grounds*, 456 N.W.2d 713 (Mich. 1990); *Zaschak v. Traverse Corp.*, 333 N.W. 2d 191, 192 (Mich. App. 1983). Cantwil contends that the pertinent inquiry is whether the defendant fraudulently concealed the existence of a claim, citing *Krygoski v. Kuber*, 2005 WL 2219427, at *2 (Mich. App. 2005), and *Doe v. Roman Catholic Archbishop of Detroit*, 692 N.W.2d 398, 405 (Mich. App. 2004). Of the four cases cited, only *Zaschak* deals with the tort of fraudulent concealment. *See also Fassihi v. Sommers, Schwartz, Silver, Schwartz &*

---

[3] Cantwil raises fraudulent concealment as a defense to untimeliness and as a separate tort claim. The former pertains to delayed filing of the lawsuit; the latter pertains to the shingles themselves.

8

*Tyler, P.C.,* 309 N.W.2d 645, 649 (Mich App. 1981) ("An action based on the failure to disclose facts [that defendant has a duty to disclose] is one for fraudulent concealment.").

The defendants did not owe a duty to Cantwil, and Cantwil did not rely on the non-disclosure.  Cantwil states that he has not alleged nor does he rely on the existence of a duty owed, and focuses his argument on affirmative representations rather than failure to disclose facts. However, he does not address whether he relied on the misrepresentations.  Cantwil admitted that he agreed to the shingles recommended by his contractor and he viewed a sales board to select the color he liked.  At no point did he rely on affirmative acts and misrepresentations that the shingles were ASTM certified and compliant with the D225 industry standard.  Pl. Mem., d/e 192, p. 23.  Cantwil did not know of the purported certifications and compliance until many years later when he noticed that the shingles were deteriorating, went into the attic, and found unused shingles in the original packaging.  Without reliance, Cantwil cannot prevail on a fraudulent concealment claim.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment as to Cantwil's claims [171] is granted in its entirety.  Case No. 09-2298 is terminated.  The clerk is directed to terminate Cantwil as a plaintiff in the consolidated case.

Entered this 12th day of April, 2013.

**s/Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE